IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

LEON MADDEN,                            )

    PLAINTIFF,                          )

VS.                                     )        CV97-H-1711-NE

UAW LOCAL UNION 2195 AUTOMOBILE,)
AEROSPACE and AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA;   )
DELPHI SAGINAW DIVISION ALABAMA
PLANTS OF GENERAL MOTORS         )
CORPORATION,
                                        )
    DEFENDANTS.

**ENTERED**

**DEC - 1 1998**

### MEMORANDUM OF DECISION

The defendants in the above styled case filed motions for summary judgment.[1]  These motions are deemed submitted to the court for decision at this time.[2]

In support of the first motion the Union filed the following evidence: excerpts from the depositions of plaintiff and Rob Naugle; affidavits of Ollie Gibbs, David Klein and Bob Kinkade; portions of the UAW Constitution; plaintiff's grievance form and plaintiff's complaint.  See June 3, 1998 Submission.  Defendant General Motors submitted an affidavit of John Morris as well as

---

[1]  Defendant Local Union No. 2195 United Automobile, Aerospace and Agricultural Implement Workers of America (the "Union") filed a motion for summary judgment on June 24, 1998. Defendant Delphi Saginaw Division Alabama Plants of General Motors Corporation ("General Motors") adopted portions of the Union's motion, added some further argument and submitted additional evidence in connection with its own motion for summary judgment on August 19, 1998.

[2]  Pursuant to the court's orders, the Union's motion was deemed submitted on July 23, 1998 and General Motors' motion was deemed submitted on September 18, 1998.



excerpts from the deposition of Ollie Gibbs and Gibbs' affidavit.
See August 18, 1998 Motion.  Plaintiff submitted a copy of
plaintiff's grievance with other handwritten notations; the
depositions of Leon Madden, Larry Blaesing, Rob Naugle, Oliver
Gibbs and David Ashcraft; the Local Agreement and Statements; and
a document regarding the red-circled wage rates with handwritten
notations.  See Attachments to July 14, 1998 Memorandum of
Plaintiff; Plaintiff's July 14, 1998 Supplemental Objections.

The Union filed a brief on June 3, 1998 and a reply brief on
July 30, 1998.  See August 10, 1998 Order.  General Motors filed
its speaking motion for summary judgment on August 18, 1998.
Plaintiff filed his memorandum in opposition to the Union's
motion for summary judgment on July 14, 1998, then later relied
on this memorandum in relation to General Motors' motion for
summary judgment.  See September 18, 1998 Memorandum of
Plaintiff.

Plaintiff commenced this action on July 10, 1997 by filing a
complaint alleging that the Union breached its duty of fair
representation under § 301 of the Labor Management Relations Act
and General Motors breached the collective bargaining agreement
("CBA") with its employees.  In the complaint plaintiff alleges
that the defendants breached their respective obligations in
connection with the practice of paying select employees within
the millwright job classification a higher wage rate than that
provided in the CBA and that rate being paid to other similar

2

employees, including plaintiff.[3]  Defendants answered denying

that any such breaches occurred.


## I.   FACTUAL BACKGROUND

Local Union Number 2195 of the International Union, United

Automobile, Aerospace and Agricultural Implement Workers of

America, AFL-CIO (the "Union") has served as the exclusive

bargaining representative along with the UAW for plaintiff and

all other employees of Defendant Delphi Saginaw Division, General

Motors Corporation, ("Saginaw") Athens, Alabama plant since the

early 1980's.  See Gibbs Affidavit ¶ 2 & ¶ 3.  On behalf of these

employees, the Union enters into a collective bargaining

agreement with Saginaw setting forth the terms and conditions of

their employment.  Id.  The UAW negotiates a master agreement for

various Saginaw facilities, while the Local negotiates an

agreement for "local" issues with Saginaw officials at the

Athens, Alabama facility.  Id.  Wages are traditionally a matter

covered by the national master agreement.  Id.

At the time when UAW organized Saginaw's Athens, Alabama

---

        [3]  The original complaint has been amended on two occasions.
The first amendment properly identified the county where the
plant in question is located as Limestone County.  See November
10, 1997 Amendment.  On July 23, 1998 the court allowed plaintiff
to amend his complaint for a second time to revise the
allegations in Count I, paragraph 8 to the extent that the
amendment was predicating relief on a failure to comply with the
CBA.  See July 14, 1998 Motion to Amend, Attachment.  The court
rejected the amendment to the extent that it seeks redress for a
breach of any agreement other than the CBA.  See July 23, 1998
Order.  The court will treat the motions for summary judgment as
addressing the complaint, as amended.

plant, there were several long-service skilled tradesmen
employees, including millwrights, being paid more than the
nationally negotiated rate for their positions.  Id.  As a way of
preventing these long-service skilled tradesmen from being
subjected to a wage cut, the UAW and Saginaw agreed to "red
circle" their rates of pay and bring in new millwrights at the
nationally negotiated rate of pay and pay progression.  Id.  The
agreement provides that the red-circle rates are phased out as
the affected employees retire or transfer out of their job
classification. See Plaintiff's Evidentiary Sub., Ex. 5.

As a millwright at Saginaw's Athens, Alabama facility,
plaintiff earns the rate of pay negotiated under the national
CBA.  See Madden depo. 55 & 116.  This pay remains below those
millwrights whose salaries were red-circled in the 1980's.  On
October 26, 1995 plaintiff filed Grievance No. C346839,
protesting the payment by Saginaw of higher wages to red circled
employees within the millwright job classification.  See Union
Submission, Ex. 2.  The red-circled wages equate to 13 cents per
hour more than plaintiff's wage rate. See Madden depo. 32.
Plaintiff's grievance was resolved at the first level by an
agreement between David Ashcraft, the union steward, and the
skilled trades supervisor Doug Pogue that "the issue will be
topic for discussion at next session of local negotiations"
between the Union and the local Saginaw officials.

Oliver Gibbs serves as the Zone Committeeperson for Skilled
Trades of UAW Local 2195 and takes part in local contract

negotiations.  See Gibbs depo. 6.  At the negotiations concerning the new local agreement, the issue of wages, including the red-circled wages, was discussed among the union representatives -- Gibbs, the shop chairman and "some international union people." See Gibbs depo. 7.  Gibbs discussed the red-circled wage rate with John Morris, Saginaw's Labor Relations Supervisor.  See Morris Affidavit ¶ 5.  Morris and Gibbs agreed that the red-circling issue had been settled previously by national officials in 1982 and that on the local level both the company and union were bound by the earlier agreement.  Id.  A contract preserving the red-circled wages was ratified on February 6, 1997 for the skilled trades and on March 13, 1997 for the production department.  Id.

Union representative David Ashcraft testified that Gibbs told Ashcraft that the wage disparity issue was not taken up during these negotiations.[4]  See Ashcraft depo. 13.  In Ashcraft's opinion the settlement of the agreement was not carried out.  Id. 17-18.  "To carry the grievance settlement out it should have been discussed in local negotiations."  Id. at 18.

According to Ashcraft, another union representative, Dwight Masterson, was told by Oliver Gibbs not to write any grievances

---

[4]  Plaintiff argues that Ashcraft's statement puts in dispute defendants' statement that the red-circled wages were discussed during the contract negotiations.  See Plaintiff's July 14, 1998 Memorandum.  Yet, plaintiff has no evidence based on personal knowledge.  Defendant produced statements by both Gibbs and Morris affirmatively acknowledging some discussion of the red-circled wages issue during negotiations.  See Morris Affidavit; Gibbs Affidavit.

on the red circling issue.  See Ashcraft depo. 10.  Furthermore,
Ashcraft testified that Gibbs told him not to write anymore
grievances based on the red circling issue.  Id. at 11.  Ashcraft
stated that Gibbs threatened that if Ashcraft wrote any such
grievances he would be in trouble with the international union
and he could possibly be pulled off his job as a union
representative.  Id. at 11-12. According to Gibbs, union
committeepersons were told that the red-circled wages "was a
settled issue by the International Union."  See Gibbs Affidavit ¶
3.  An agreement titled "Statement for the Minutes (not to be
published)" provides for red-circled wages.  See Plaintiff's
Evid., Ex. 5

## II.  LEGAL ANALYSIS

### A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The
party asking for summary judgment always bears the initial
responsibility of informing the court of the basis for its
motion, and identifying those portions of the pleadings or
filings, which it believes demonstrate the absence of a genuine
issue of material fact.  Celotex, 477 U.S. at 323.  Once the

6

moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the

burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to _affirmatively_ show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  _Fitzpatrick_, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343 (1996).

In this case plaintiff is asserting a "hybrid" claim under Section 301 of the Labor Management Relations Act.  When pursuing a hybrid § 301 claim the plaintiff must prove **both** a breach of the contract by the company and the union's breach of the duty of fair representation in order to prevail.  United Parcel Service v. Mitchell, 451 U.S. 56, 62 (1981); Parker v. Connors Steel, 855 F.2d 1510, 1519 (11th Cir.).

## B.  Statute of Limitations Issue

A hybrid § 301 claim is subject to a six-month statute of limitations.  DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983). Plaintiff's cause of action for any breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage.  Hayes v. Reynolds Metal Co., 769 F.2d 1520, 1522 (11th Cir. 1985).  Therefore, this six-month statute of limitations runs from the point where the grievance process came to a halt.  Hayes, 769 F.2d at 1522.

From the evidence presented it appears that plaintiff's grievance was resolved on November 19, 1995 at the first step of the process by the agreement between Doug Pogue, on behalf of the company, and David Ashcroft, the union steward, that the "issue

[red-circled wages] will be topic for discussion at next session
of local negotiations."  See Ex. 1 to Plaintiff's July 14, 1998
Memorandum.  In reality plaintiff's grievance was resolved by a
promise to discuss red-circled wages at future contract
negotiations.  The making of this promise concluded the grievance
process by resolving his grievance.  If plaintiff wanted more
response than this promise, he should have pursued his grievance
to the next level or timely filed this action.  The resolution of
plaintiff' grievance was not in fact based on any discontinuance
of red-circled wages or the requirement that any discussion of
the red-circled wages take place during negotiations.  Rather,
plaintiff resolved his grievance based on simply a promise that
such discussions would occur.

Based on these facts, the court concludes that plaintiff's
hybrid § 301 action accrued on or about November 19, 1995,
thereby rendering this action barred by the applicable six-month
statute of limitations.


C.  Breach of Contract Claim

Even assuming that the court incorrectly assessed the
statute of limitations issue, defendants are alternatively
entitled to summary judgment based on the merits of this action.
Defendants assert that plaintiff's complaint is in essence an
unhappiness with the portion of the contract allowing red-circled
wages and not actually based on any breach of the contract.

However, plaintiff never asserts in his brief that the practice of red circling constitutes a breach of the CBA. Rather, plaintiff argues that General Motors breached the CBA by not properly resolving his grievance concerning red circling in accordance with the terms of the CBA. See Plaintiff's July 14, 1998 Memorandum. According to plaintiff, General Motors foreman, Doug Pogue's signature on plaintiff's grievance subjects General Motors to responsibility under the grievance handling process for full resolution of plaintiff's grievance. Id.

Plaintiff points to the following language in the "Local Agreements and Statements" contract:

> 19. Supervisors of Skilled Trades employees will continue to be responsible for the first step of the grievance procedure. Management emphasizes these supervisors have decision making responsibility with regard to the settlement of grievances at this step of the grievance procedure. Further, Skilled trades supervisors will address problems on his/her respective shift and attempt to communicate more effectively with adjacent shift supervisors. Furthermore the parties mutually agree to jointly develop a grievance awareness and compliance training program beginning with Paragraph 28 of the GM-UAW National Agreement for presentation to all Union and Management representatives responsible for the first step and the step and one-half of the grievance procedure. Along with this program, Management will develop a grievance tracking system for Skilled trades grievances not processed to the second step of the grievance procedure which will be available to the Zone Committeeman upon request.

See Local Agreement, Ex. 6 of Attachments to Plaintiff's July 14, 1998 Memorandum. Even when considering the evidence presented in the light most favorable to plaintiff, the court can discern no arguable breach of contract by General Motors. Based on the undisputed evidence presented, paying plaintiff the negotiated

11

wage rate and certain other employees a red-circled wage rate is in compliance with the contract.  While the CBA requires supervisors of skilled trades employees to participate in the first step grievance process on behalf of the company, the evidence establishes that Pogue participated in the grievance process and helped resolve the grievance with the union steward. The simple fact that plaintiff is not satisfied with the resolution of the grievance in no way proves a breach of contract by General Motors.  Plaintiff's failure to present substantial evidence supporting his claim of a breach of contract by General Motors necessitates the dismissal of his hybrid § 301 action. Parker v. Connors Steel Co., 855 F.2d 1510 (11th Cir. 1988).

Based on the foregoing, defendants are entitled to summary judgment in their favor.  A separate order will be entered.

DONE this ___1st___ day of December, 1998.

SENIOR UNITED STATES DISTRICT JUDGE

12